**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROSIO ROSARIO, | COMPLAINT |
| Plaintiff, | |
| | Civil Action No. _____ |
| v. | |
| PHARMERICA LOGISTIC SERVICES LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

**<u>COMPLAINT</u>**

Plaintiff, Rosio Rosario, by and through her undersigned counsel, The Lacy Employment Law Firm, LLC, files this Complaint against Defendant PharMerica Logistic Services LLC and avers as follows:

**<u>NATURE OF THE ACTION</u>**

**1.** This is an action for unlawful discrimination based on sex and pregnancy, retaliation, and violation of the Family and Medical Leave Act. Plaintiff Rosio Rosario brings claims under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e et seq.; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.

**2.** Defendant terminated Plaintiff's employment on July 16, 2025 - ten days after she gave birth and while she was on approved maternity leave - in what was ostensibly a reduction in force. However, the timing of the termination, the circumstances surrounding it, and the contradictory statements of Plaintiff's own supervisor demonstrate that Defendant's stated reason for termination was pretextual and that Plaintiff was in fact terminated because of her pregnancy and sex, and in retaliation for exercising her rights under the FMLA.

## JURISDICTION AND VENUE

**3.** This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question), as the action arises under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, and the Family and Medical Leave Act.

**4.** This Court has supplemental jurisdiction over Plaintiff's state-law PHRA claims pursuant to 28 U.S.C. § 1367, because those claims arise from the same common nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

**5.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District. Defendant maintains its place of business in Bethlehem, Pennsylvania, and the unlawful employment practices alleged herein were committed within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**6.** On October 13, 2025, Plaintiff timely dual-filed a Charge of Discrimination with the Philadelphia District Office of the Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR"), alleging discrimination and retaliation on the basis of sex, pregnancy, and race. The Charge was assigned EEOC Charge No. 530-2026-00324.

**7.** Plaintiff's Charge was cross-filed with the PCHR, thereby satisfying the dual-filing requirement of the PHRA.

**8.** On May 26, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to EEOC Charge No. 530-2026-00324. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit 1 and incorporated by reference.

**9.** Plaintiff has filed this Complaint within ninety (90) days of her receipt of the Notice of Right to Sue.

**10.** Plaintiff has fully complied with, and exhausted, all administrative prerequisites to the commencement of this action.

## PARTIES

**11.** Plaintiff Rosio Rosario ("Plaintiff" or "Ms. Rosario") is an adult individual residing at 417 N 5th Street, Allentown, Pennsylvania 18102. At all relevant times, Plaintiff was employed by Defendant and was an "employee" within the meaning of Title VII, the FMLA, the ADA, and the PHRA.

**12.** Defendant PharMerica Logistic Services LLC ("Defendant" or "PharMerica") is a pharmacy services company with a facility located at 3910 Adler Place, Suite 210, Bethlehem, Pennsylvania 18017. At all relevant times, PharMerica was an "employer" within the meaning of Title VII, the FMLA, the ADA, and the PHRA, and employed the requisite number of employees to be subject to each statute.

**13.** At all relevant times, PharMerica acted through its officers, managers, agents, and employees, including its Operations Manager and Pharmacy Director, who made the decision to terminate Plaintiff's employment.

## FACTUAL BACKGROUND

**14.** On or about July 16, 2024, Defendant hired Plaintiff as a pharmacy technician at its Bethlehem, Pennsylvania facility. In this role, Plaintiff was responsible for processing routine prescription medications for distribution to long-term care facilities, including accurately filling prescriptions, properly labeling products, and assisting the pharmacist with medication preparation.

**15.** During her approximately one year of employment with Defendant, Plaintiff performed her job responsibilities competently and in a manner that satisfied Defendant's standards. Plaintiff consistently maintained the high level of quality and accuracy required for prescription fulfillment.

**16.** Plaintiff had no disciplinary history, no performance improvement plan, and no corrective actions during her tenure with Defendant.

**17.** Plaintiff's direct supervisor, George Jacome, regularly commended Plaintiff's efficiency, reliability, and ability to troubleshoot complex operational challenges. Mr. Jacome expressed satisfaction with Plaintiff's work performance and her contributions to the facility's operations.

**18.** In approximately April or May 2025, Plaintiff disclosed to Defendant that she was pregnant. Plaintiff's pregnancy progressed normally, and Defendant approved Plaintiff's request for maternity leave consistent with the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

**19.** Plaintiff's last day of work was June 27, 2025. Plaintiff went on approved maternity leave in late June 2025, expecting to return to work following the conclusion of her protected leave period.

**20.** Plaintiff gave birth on July 6, 2025, without complications. Plaintiff immediately began receiving short-term disability benefits through MetLife effective July 5, 2025, continuing through August 30, 2025, to support her postpartum recovery.

**21.** Plaintiff remained on approved FMLA maternity leave at the time of her termination.

**22.** In early 2025, Defendant informed the Bethlehem facility that it had lost three contracts with long-term care facilities that had previously utilized Defendant's bulk prescription

ordering services. Due to this loss of contracts, Defendant determined that it needed to reduce the number of pharmacy technicians employed at the facility.

23. Defendant states that it performed an evaluation to determine how many pharmacy technicians were necessary to fill the reduced volume of prescriptions and concluded that six positions needed to be eliminated.

24. Defendant further claims that it used a "competency matrix" to evaluate pharmacy technicians based on factors including productivity, communication skills, customer service skills, problem-solving ability, additional training, cross-training, specialized skills, and education.

25. Defendant terminated one employee identified as having performance or disciplinary issues. Defendant then allegedly selected five additional employees, including Plaintiff, based on their scores on this competency matrix. Plaintiff, who was only trained in cycle fill duties, received a competency score of 16, which Defendant claims was the third lowest score among all pharmacy technicians at the facility.

26. Plaintiff's termination was effective July 16, 2025 - exactly one year to the day after her hire date and precisely ten days after she gave birth to her child.

27. Plaintiff received notice of her termination while she was on approved maternity leave and still recovering from childbirth. On July 16, 2025, Defendant's Operations Manager and Pharmacy Director called Plaintiff at home and informed her that her position had been "eliminated due to business needs."

28. The timing of Plaintiff's termination - occurring during her protected FMLA leave, immediately following her maternity leave, and while she remained off work recovering from

childbirth - creates a compelling inference that Plaintiff's termination was motivated by her pregnancy and sex rather than by any legitimate business reason.

**29.** Defendant provided Plaintiff with no advance notice of the reduction in force despite the fact that Plaintiff's leave was approved and anticipated. Defendant did not offer Plaintiff the opportunity to obtain additional training or cross-training that might have allowed her to avoid termination. Defendant offered no transitional support or reassignment options.

**30.** Defendant made no meaningful effort to discuss alternatives with Plaintiff or to engage in any interactive process regarding her termination during her protected leave.

**31.** Following Plaintiff's termination, Plaintiff's supervisor, Mr. Jacome, privately expressed to Plaintiff his disagreement with Defendant's decision to terminate her. Mr. Jacome stated that he believed the elimination of Plaintiff's position was unjustified and apologized to Plaintiff for Defendant's actions.

**32.** Mr. Jacome's statements constitute an admission against the interests of Defendant that contradicts Defendant's stated justification for the reduction in force and suggests that Plaintiff's termination was pretextual.

**33.** Defendant offered Plaintiff a severance agreement providing two weeks of severance pay based on her tenure. Plaintiff initially signed the agreement but exercised her right to revoke it within the statutory seven-day revocation period.

**34.** Defendant's stated justification - that Plaintiff was selected for termination based on the lowest competency scores - appears pretextual in light of the following circumstances:

    a. The timing of the termination occurred during Plaintiff's FMLA-protected maternity leave, ten days after she gave birth, while she was recovering from childbirth and unable to advocate for herself;

b. Plaintiff's direct supervisor, Mr. Jacome, contradicted Defendant's stated justification by acknowledging that her termination was unjustified;

c. Defendant failed to offer Plaintiff any advance notice, alternative positions, training opportunities, or meaningful explanation despite knowing she was on protected leave;

d. The reduction in force occurred while Plaintiff was in a vulnerable position, having just given birth and being on medical leave;

e. Defendant's decision to notify Plaintiff while she was off work recovering from childbirth, rather than before her leave commenced, suggests an intent to avoid confrontation and possible negotiation;

f. Defendant provided Plaintiff with no opportunity to respond to or address the alleged performance concerns that purportedly justified her termination;

g. The close temporal proximity between Plaintiff's protected activities - her pregnancy, her use of FMLA leave, and her recent childbirth - and the termination decision creates a strong inference of discriminatory and retaliatory motive.

**35.** As a direct result of Defendant's unlawful termination, Plaintiff has suffered and continues to suffer the following damages: loss of wages and benefits from July 16, 2025 to the present, including salary, health insurance, and other employment benefits; loss of future earnings and benefits; emotional distress, humiliation, and loss of dignity resulting from her sudden termination while vulnerable and recovering from childbirth; costs incurred for health coverage and other expenses necessitated by her involuntary separation from employment; diminished earning capacity and career prospects; and damage to her professional reputation and employment history.

## COUNT I
### Discrimination Based on Sex and Pregnancy in Violation of Title VII and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq.

36. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

37. At all relevant times, Plaintiff was a member of the class protected by Title VII, specifically as a woman and as a pregnant employee.

38. Plaintiff was qualified for her position and performed her job satisfactorily, as evidenced by the commendations from her supervisor and her lack of any disciplinary history.

39. Plaintiff was subjected to an adverse employment action - termination of her employment - while on approved FMLA maternity leave.

40. The circumstances surrounding Plaintiff's termination give rise to an inference of discrimination based on her sex and pregnancy, including the timing of the termination during her postpartum recovery leave, the lack of advance notice, the failure to offer alternatives, and the contradictory statements of her supervisor.

41. Defendant's stated justification for the termination - that Plaintiff was selected as part of a reduction in force based on low competency scores - is pretextual. The timing of the termination, the circumstances surrounding it, and the admissions of Plaintiff's supervisor all demonstrate that Defendant's true motivation was Plaintiff's sex and pregnancy.

42. Defendant's conduct was willful and demonstrates a reckless disregard for Plaintiff's rights under Title VII and the Pregnancy Discrimination Act.

43. As a direct and proximate result of Defendant's violation of Title VII and the Pregnancy Discrimination Act, Plaintiff has suffered the damages described herein, for which

she seeks all relief available under 42 U.S.C. § 2000e-5, including back pay, front pay, compensatory damages, punitive damages, prejudgment interest, and attorneys' fees and costs.

**COUNT II**
Retaliation in Violation of Title VII and the Family and Medical Leave Act

44. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

45. Plaintiff engaged in protected activity under the FMLA when she requested and took maternity leave in connection with the birth of her child and her postpartum recovery.

46. Defendant was aware of Plaintiff's protected activity. Defendant knew that Plaintiff was pregnant, had approved her maternity leave, and was aware of the timing of her termination relative to her childbirth and leave.

47. Following and because of Plaintiff's protected activity, Defendant subjected Plaintiff to a materially adverse action - termination of her employment.

48. A causal connection exists between Plaintiff's protected activity and the adverse action. The close temporal proximity between Plaintiff's maternity leave and her termination, the failure to provide advance notice or alternatives, and the admissions of her supervisor all evidence the causal connection between her protected leave and her termination.

49. Defendant's stated reason for the termination - the reduction in force - is pretextual. An employer does not violate the FMLA merely by taking an action during FMLA leave if the action would have been taken regardless of the leave. However, the timing of Defendant's decision to notify and terminate Plaintiff while she was off work recovering from childbirth, combined with the lack of advance notice and alternatives, demonstrates that Defendant's decision was motivated by her use of FMLA leave.

**50.** As a direct and proximate result of Defendant's retaliation in violation of Title VII and the FMLA, Plaintiff has suffered the damages described herein, for which she seeks all relief available under the FMLA and Title VII.

**COUNT III**
Violations of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

**51.** Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

**52.** At all relevant times, Defendant was an "employer" within the meaning of the PHRA, and Plaintiff was an "employee" protected by the PHRA.

**53.** Plaintiff dual-filed her Charge with the PHRC. More than one year has elapsed since that filing. Plaintiff has therefore exhausted her administrative remedies under the PHRA.

**54.** The PHRA prohibits discrimination based on sex and race, and retaliation for protected activity, on the same terms as Title VII. By engaging in the conduct described above - sex and pregnancy discrimination and retaliation - Defendant violated the PHRA.

**55.** Plaintiff's PHRA claims are based on the same factual averments that support her Title VII and FMLA claims.

**56.** As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages described herein, for which she seeks all relief available under the PHRA, including compensatory damages and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rosio Rosario respectfully requests that this Court enter judgment in her favor and against Defendant PharMerica Logistic Services LLC, and grant the following relief:

a. Declaring that the acts and practices complained of herein violate Title VII, the FMLA, the PHRA, and federal common law;

b. Enjoining Defendant from engaging in the unlawful practices alleged herein;

c. Awarding Plaintiff back pay, front pay, lost benefits, and lost earning capacity, in amounts to be determined at trial;

d. Awarding Plaintiff compensatory damages, including damages for emotional distress, humiliation, and loss of life's enjoyment, under Title VII and the PHRA;

e. Awarding Plaintiff punitive damages under Title VII to deter Defendant's willful violations;

f. Awarding Plaintiff prejudgment and post-judgment interest;

g. Awarding Plaintiff the costs of suit, expert fees, and reasonable attorneys' fees; and

h. Granting such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

THE LACY EMPLOYMENT LAW FIRM, LLC

*/s/ Rick Haarbauer*
Rick Haarbauer, Esquire
PA Bar No. 333454
Andrew Lacy, Esquire
PA Bar No. 321232
3675 Market Street, Suite 200
Philadelphia, PA 19104
(412) 301-3908
rickhaarbauer@lacylegal.com
andrew.lacy@lacylegal.com

Counsel for Plaintiff

Dated: August 13, 2026